BLANKS *v.* AMERICAN SOUTHERN TRUST COMPANY.

Opinion delivered July 2, 1928.

*Compere & Compere* and *Coleman & Riddick,* for appellant.

*Buzbee, Pugh & Harrison,* for appellee.

HUMPHREYS, J. Appellee brought this suit against appellant in the circuit court of Pulaski County, Second Division, upon a renewal note executed by him and others to recover $83,313.70. Appellant filed an answer, admitting the execution of the note, but denying liability thereon for the alleged reasons:

(1) That it was executed pursuant to a transaction prohibited by § 8, article 12, of the Constitution of the State, §§ 750 to 771, inclusive, of Crawford & Moses' Digest, and §§ 1703, 1727, of Crawford & Moses' Digest; also § 13 of article 19 of the Constitution of the State of Arkansas, and §§ 7354 and 7355 of Crawford & Moses' Digest; (2) that the note was a renewal note of one given in the first instance by appellant upon appellee's promise that he would not be required to pay it; (3) that the note was an accommodation note, and without consideration; (4) that appellee released some of his co-obligors without his knowledge and consent, which had the effect of releasing him; and (5) a payment of the note in full.

By consent the cause was tried by the court sitting as a jury. A verdict was returned for appellee and a consequent judgment rendered in its favor for the face of the note and accumulated interest, from which is this appeal.

On February 16, 1920, the Doyle-Kidd Dry Goods Company, a corporation engaged in the wholesale dry goods business, entered into a written contract with the American Bank of Commerce & Trust Company, a banking institution organized under the laws of Arkansas, to sell said bank $250,000 of its 7 per cent. preferred stock of the par value of $250,000 for $230,000, with the understanding that, at the expiration of three years after the delivery of the stock, the dry goods company

would either buy or find a purchaser at $92 per share for any of the stock the bank should be unable to sell to third parties at par. The faithful performance of the contract on the part of said dry goods company was personally guaranteed by T. N. Doyle, as trustee for the T. N. Doyle estate, B. P. Kidd, and appellant, all of whom were large stockholders, directors and officers in said dry goods company. T. N. Doyle and appellant were stockholders and directors, at the time of the execution of the contract, in the American Bank of Commerce & Trust Company. The contract for the sale and repurchase of the stock and the personal guaranty of appellant and his associates that the dry goods company would carry out its contract was negotiated by the vice president of the bank, Ed Cornish, and the president of the Doyle-Kidd Dry Goods Company, T. N. Doyle, but the contract was signed for the company by appellant. Pursuant to the agreement, on the 28th day of February, 1920, preferred stock in the amount of $250,000 par value was issued by the Doyle-Kidd Dry Goods Company to Ed Cornish, trustee for the American Bank of Commerce & Trust Company, which was delivered to the bank on the faith of the agreement and guaranty aforesaid, and the bank paid the dry goods company the sum of $230,-000 in cash. Neither the dry goods company nor the bank complied with the requirements of the Blue Sky Law contained in §§ 750 to 771, inclusive, of Crawford & Moses' Digest, nor received any certificate of authority to sell the preferred stock of the dry goods company prior to the sales thereof by the dry goods company to the bank and by the bank to third parties. The dry goods company sold the stock below par to the bank, contrary to § 8, article 12, of the Constitution of the State, which is as follows:

"No private corporation shall issue stocks or bonds except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pur-

suance of general laws, nor until the consent of the persons holding the larger amount in value of stock shall be obtained at a meeting held after notice given for a period not less than sixty days, in pursuance of law.''

The dry goods company and its guarantors agreed to repurchase the unsold stock, at the expiration of three years, below par, and the guarantors did so contrary to § 1703 of Crawford & Moses' Digest, which prohibited the repurchase of same below par. The bank succeeded in selling only $82,550 of the stock to third parties at par within the three-year period. In the meantime the Doyle-Kidd Dry Goods Company changed its name to the Doyle Dry Goods Company. The guarantors were notified in January, 1923, that the bank was being criticized for carrying the stock in the manner it was, and that they must redeem the balance of the stock under the guaranty contract for $92 a share.

A short time before the expiration of the three-year period, the Doyle Dry Goods Company paid the bank $45,000 on the repurchase of the stock, and appellant and his co-obligors executed to the bank their note for $113,825.10, due in six months, in redemption of the stock, and retired 552 shares of the stock, and pledged 1,122½ shares thereof as collateral security for the payment of the note. The amount due at the time for the redemption of the stock was $109,054, but 6 per cent. advance interest was figured and included in the note, totaling $113,825.10. The amount of the note was arrived at by deducting 8 per cent. from the amount of the unsold stock, amounting to $167,450, then deducting from that amount $82,500 for the stock sold by the bank and $45,000 paid by it, and adding to the remainder six months' interest. When the note was signed by appellant and his associates, the Doyle Dry Goods Company was released from its original contract with the bank to redeem or find a purchaser for the stock.

After the execution of the note, the American Bank of Commerce & Trust Company consolidated with the Southern Trust Company, and the consolidated institu-

tion took the name of the American Southern Trust Company, and became the owner of the note of appellant and those who signed it with him at the time of said consolidation. The renewal notes were subsequently executed by appellant and his associates to appellee. The indebtedness was reduced from time to time from sales of stock which was attached as collateral, until the last renewal note upon which this suit was brought, and which was executed on the 23rd day of January, 1926, for $82,318.07. Appellant continued as director of the American Bank of Commerce & Trust Company until its consolidation with the Southern Trust Company, and then became director of the appellee, and continued in that capacity until January, 1927. He also continued as director and active vice president of the Doyle Dry Goods Company until January, 1927.

The note sued upon was dated January 23, 1926, due six months after date, bearing interest at the rate of 8¾ per cent. per annum, and was signed by W. B. Smith, H. W. Doyle, R. A. Doyle, and the appellant, J. P. Blanks. T. N. Doyle had signed the original and some of the notes executed pursuant to the guaranty contract, and did not sign the note sued upon, as he was dead at the time. The notes, when taken up by renewal notes, were turned over to appellant, except, perhaps, the last renewal note signed by T. N. Doyle, which was retained by the bank. W. B. Smith died after the execution of the note sued upon, and the representative of his estate was not made a party defendant on account of an agreement or an arrangement similar to the one made between the bank and the Doyles, who were not made parties defendant in the action. The bank entered into an agreement with A. H. Treeman of Ithaca, New York, not to sue the Doyles upon the renewal note and another note upon payment to it and the Union Trust Company of $17,136.28 to be applied on the renewal note and other notes, reserving the right to proceed in any manner against appellant, James P. Blanks, and, in the event suit should be brought against the Doyles by appellant

for contribution, the said bank would immediately return the money so paid to the Doyles. It does not appear how much of the amount paid by A. H. Treeman was applied as a credit on the renewal note.

Appellant offered to testify that, at the time he signed the original note executed pursuant to the guaranty contract, he signed it under agreement with Ed Cornish, vice president of the American Bank of Commerce & Trust Company, that he would not be required to pay it. This testimony was excluded and not considered by the trial court, over the objection and exception of appellant.

During the three-year period in which the bank agreed to sell the stock to third parties at par, it tentatively or conditionally sold El Dorado parties $64,000 of the stock. According to the testimony of W. A. Hicks, the stock was turned over to customers as·a temporary investment until the bank could acquire other securities which its customers wanted. The bank treated the sale as an absolute one in making up its report to the State officials. The stock had been returned to it and was in possession of the bank at the time it called upon appellant and his associates to redeem the stock under the guaranty contract.

We deem it unnecessary to set out the substance of the testimony at greater length in order to determine the questions involved on this appeal.

The main contention of appellant for a reversal of the judgment is that the note sued upon was without consideration and void, because executed pursuant to a contract made in violation of the Constitution and statutes of the State. Although there is nothing in the record tending to show any intentional violation of the Constitution or Blue Sky Law in the transaction by either the Doyle-Kidd Dry Goods Company or the bank, yet the fact remains that the stock was sold below par in violation of the Constitution, and without obtaining authority from the Banking Department to sell same, contrary to the statutes of the State.

The general rule is that courts will not enforce contracts made in violation of the law, but will leave the parties to such contracts where it finds them, if they were *in pari delicto*. The penalties, however, incident to a violation of the Blue Sky Law are visited upon the seller of stock unless the buyer is *in pari delicto* with the seller. If the buyer is not *in pari delicto* with the seller, the general rule is that the buyer may, within a reasonable time, recover his money by tendering back the stock received by him. The rule against the enforcement of such contracts does not apply to directors and officers of business corporations who have obtained funds for the benefit of such corporations upon illegal agreements from banking institutions in which they are also directors. If the rule were applicable in such cases, it would open an avenue by which directors and officers could borrow the funds upon illegal contracts for themselves or corporations in which they are interested, and, after the funds have been spent, or perhaps lost in business transactions, defend, in case suit is brought against them or their corporations, upon the ground that the transaction is illegal. It was the duty of appellant to expend the bank's money in legitimate transactions, and he cannot be heard to say that he is not responsible because he expended the bank's money in purchase of stock contrary to law. Appellant cannot escape because he did not personally participate in the transaction on the part of the bank. He knew his company was getting the bank's money of which he was a director, for preferred stock which his company had no right to sell below par, and without obtaining authority to do so from the proper State official.

Appellant interposed, among other defenses to the note, a plea of usury. He was not dealing at arm's length with the bank, but in effect was dealing with himself in a dual fiduciary capacity. If the transaction was usurious, he should not have countenanced it in order to aid his company in selling a large block of its preferred stock to the bank of which he was a director. He is

estopped from setting up illegality of the contract in which he participated, as a defense to the suit upon the renewal note.

Appellant next contends for a reversal of the judgment upon the alleged ground that the original note was given without consideration, and that the renewal note upon which suit was brought is also void for that reason. It was a part of the original agreement in which appellant's company received $230,000 that he and his associates would guarantee the performance of the contract on the part of his company by redeeming the stock the bank was unable to sell during the three-year period at $92 a share. Instead of redeeming under the contract for cash, appellant and his associates elected to give a note to the bank in redemption or repurchase of the stock. At the time the original note was executed, the contract with the dry goods company was satisfied in full. Satisfaction of the contract with the dry goods company, which had been guaranteed by appellant and his associates, was a valid consideration for the original and all the renewal notes executed by appellant and his associates.

Appellant next contends for a reversal of the judgment because the court excluded his testimony to the effect that he agreed to sign the note under the promise that he would not be called upon to pay same. His evidence was in contradiction of the note which he signed, and tended to vary its terms. The court properly excluded the testimony. Even if the evidence were admissible, he could not interpose it as a defense to the suit upon the note, because it was his duty as a director not to entertain such a promise and act upon it to the detriment of his bank.

Appellant next contends for a reversal of the judgment on account of the contract made between the bank and A. H. Treeman not to sue the Doyles, and on account of a similar agreement made between the bank and the representative of W. B. Smith's estate not to sue the estate. We set out the substance of the agreement with

Treeman, and it does not amount to a release of the Doyles. The agreement provided specifically that if J. P. Blanks should sue for contribution, the bank would immediately return the money paid to it by A. H. Treeman, and expressly reserved the right in the agreement to proceed against appellant. If appellant at any time pays more than his *pro rata* share of the note, he will have the right, notwithstanding the agreement between the bank and A. H. Treeman, to proceed against the other makers of the note for contribution. He is not in any way injured by payment of a part of the note by A. H. Treeman.

Appellant next contends that he has paid the note if he had been given proper credits. He bases his claim of payment in full upon the failure of the bank to account for $64,000 of stock which it delivered to parties in El Dorado. The finding of the court that the delivery of the stock was conditional and not an absolute sale of the stock is sustained by the weight of the evidence. According to the testimony of W. A. Hicks, the delivery of the stock to the El Dorado parties was a temporary arrangement to take care of its customers until it could find or obtain securities which its customers wanted. It is true that, after the delivery of the stock, the bank treated it as a sale in its report to the State official, but this act is not conclusive that the delivery of the stock constituted a *bona fide* sale thereof. No transfer of the stock was ever made on the books to the El Dorado customers, and, as soon as the bank found securities which its customers wanted, the stock was returned to the bank, and the bank had it in possession as its own property at the time it called upon appellant and his associates to redeem the stock under the guaranty contract. The other claim of payment of appellant was based upon interest in excess of 10 per cent. alleged to have been paid by the Doyle-Kidd Dry Goods Company and the Doyle Dry Goods Company to the bank. If, as a matter of fact, interest in excess of 10 per cent. was paid in carrying out the transaction, it cannot be credited as a

payment on a renewal note, as appellant had no right to interpose the plea of usury as a defense.

No error appearing, the judgment is affirmed.

HART, C. J., dissents.