Moss *v.* CHITWOOD.

Opinion delivered December 9, 1929.

*Starbird & Starbird,* for appellant.

*Dave Partain,* for appellee.

SMITH, J. Appellant Moss brought suit on a note executed by C. C. Fine to the order of the Bank of Dyer, and indorsed by Chitwood and Bushmaier, which he alleged he had purchased from the bank. The note was for the sum of $1,603.42, and was dated June 4, 1922, and was payable four months after date, but certain credits were admitted, which reduced the amount to $1,508.96, and judgment was prayed for this amount.

An answer was filed by the defendants, Chitwood and Bushmaier, which alleged that, on the day of the execution of the note, plaintiff Moss was the president of the Bank of Dyer, and one Morse was its cashier, and that Morse requested them to indorse the note as sureties and accommodation makers for Fine, who was engaged in the mercantile business at Dyer, and had been permitted to overdraw his account at the bank in the sum of $1,603.42, and the State Banking Department had required that the overdraft be secured, and they were urged to sign the note on behalf of the bank, and as an inducement so to do they were assured by Morse that the bank would retain the note in its possession, and would under no circumstances permit it to get beyond its control, and that the bank and its officers would see that they (the defendants) did not lose anything, and would not have the note to pay, and, relying upon this assurance, they signed the note. Defendants, as witnesses, gave testimony in support of these allegations.

Defendants alleged that Fine had made payments on the note while it was in the possession of the bank which are not credited thereon, and that in December, 1925, the Bank of Dyer failed, and was succeeded by the Farmers' State Bank, which assumed all the liabilities and took over all the assets of its predecessors, including the Fine note, and that the Farmers' State Bank later failed, at which time Fine had on deposit the sum of $646.43, and it was prayed that the amount of this deposit be credited upon the note. Defendants further alleged that Moss had obtained possession of the note by fraud, and the answer denied that Moss was an innocent holder thereof, wherefore it was prayed that plaintiff take nothing by his suit.

The cause was transferred to the chancery court, where it was tried, and upon a general finding in favor of the defendants the suit was dismissed.

The undisputed testimony shows that Fine was not overdrawn at the Bank of Dyer at the time of the execution of the note, and that the purpose of its execution was not to take care of an overdraft, as the answer alleged, but that it was executed for the purpose of enabling Fine to purchase a stock of goods; and there is no question but that the bank advanced in cash the face of the note at the time of its execution.

Moss testified that he purchased the note from the Bank of Dyer on June 9, 1922, which was, of course, before its maturity, and that he paid its face value, less the credit indorsed thereon, and he was corroborated by Morse, the cashier, and the books of the bank show that Moss' account was charged on that day with the face of the note. It appears certain therefore that Moss was the actual purchaser of the note before its maturity, and that he paid full value therefor, and we think the testimony also shows that he was an innocent purchaser thereof.

Moss testified, in effect, that the bank was overloaded with paper, and that he regarded the note as good, made

so by the indorsements of the defendants, and that he bought it for full value, and paid his own money for it, and the records of the bank, made at the time, corroborate this last statement, and that he was not advised that there was any agreement between the cashier and Chitwood and Bushmaier whereby the note should not have the binding obligation which upon its face it appeared to have.

If this testimony is true, the plaintiff's right to recover on the note is not, and cannot be, questioned, for Morse, the cashier, had the right to sell the note. *Arrington* v. *King*, 179 Ark. 584, 17 S. W. (2d) 302; *Winer* v. *Bank of Blytheville*, 89 Ark. 435, 117 S. W. 232, 131 Am. St. Rep. 102.

It is true that Chitwood and Bushmaier gave testimony tending to sustain the allegations of their answer that they signed the note for the accommodation of the bank, and were induced to do so only upon the assurance of the cashier of the bank that they would not be called upon to pay it, and that they were thereby enabling the bank to cover up a transaction which was entered into to deceive the State Banking Department. In this connection they testified that Morse represented that he would take a chattel mortgage upon the stock of goods which Fine proposed to buy, and which he did buy, with the proceeds of the note, and that this mortgage was taken by Morse and filed by him with the circuit clerk and recorder, and that it was done to indemnify them against their indorsement.

It appears now to be conceded by both parties that this mortgage, taken, as it was, upon an open stock of goods, which was being sold and replenished, was void, and, although it may be said that the State Banking Department would not have approved a loan made upon a security of that kind, the parties themselves regarded the security as valid. This is evidenced by the fact that Chitwood and Bushmaier later took charge of the stock of goods under the mortgage and disposed of it, and it

is not made clear what disposition was made of the proceeds. Their liability to account to Fine for the stock of goods appears to be clear, but this feature of the case was not developed.

The assistant Bank Commissioner testified that, when the Bank of Dyer went into liquidation and was succeeded by the Farmers' State Bank, which was organized for that purpose, and of which institution Moss and Morse became president and cashier, respectively, a list of all the assets of the Bank of Dyer was prepared, and the note in suit was not included, and it was never at any time carried as an asset of the Farmers' State Bank.

Upon a consideration of all the testimony we have concluded that Moss was an innocent purchaser of the note for value and before maturity, and, having made this finding, it is unnecessary to determine whether defendants were induced to indorse the note upon Morse's representations that they would not be held liable thereon, or the effect of that representation, if made. *Coffman v. Bottoms,* 179 Ark. 264, 15 S. W. (2d) 404; *Blanks v. American Southern Trust Co.,* 177 Ark. 832, 9 S. W. (2d) 310.

Appellees have cited cases from this court to the effect that parol testimony is admissible to show that a note or other contract was signed upon condition that no delivery of it should be made as a valid and subsisting contract until certain precedent conditions had been performed, and, when this fact is established, the contract, even though it were a promissory note, is not enforceable, where it is not also shown that the conditions upon which it was to be delivered had been performed. Among these cases the latest is that of *Taylor, Bank Commissioner,* v. *Deese,* 179 Ark. 39, 14 S. W. (2d) 255. But the opinion in that case makes plain the law that this defense would not be available against an innocent purchaser of such a note for value and before maturity. Moreover, there was no attempt here to show that there were any

unperformed conditions which should have preceded the delivery of the note. On the contrary, the defense is that it was understood that the note should not have the obligations ordinarily incident to a writing of that character after its delivery to the payee.

The decree of the court dismissing the cause as being without equity is therefore reversed; but there remains to be determined the number and amount of the credits to be applied upon the note.

Upon this question we have first to say that the Farmers' State Bank had no authority, as appellees insist, to credit the amount of Fine's deposit on the note, for the reason that the Farmers' State Bank never owned this note.

It appears, however, that Moss kept this note and other valuable papers in the vault of the bank, and that Morse had access to them, and had authority from Moss to make collections upon paper held by Moss, and that, while the note in suit was so owned and held, payments were made upon it, one of which, at least, is not disputed. Any payments so made should be credited upon the note, although Moss was the owner thereof. It is true, of course, that the maker of a note must make payments thereon to the holder thereof, and payments otherwise made are made at his peril, but the testimony shows that the maker and indorsers of the note did not know that Moss had become the owner thereof, and the note was payable at and to the order of the Bank of Dyer, and if, when the payments were made, the note was in the possession of the cashier of the Farmers' State Bank, which had taken over the assets of the Bank of Dyer, they had the right to assume, in the absence of knowledge to the contrary, that Morse had authority to receive payments thereon. This is true because Morse was the holder of the note, and, while defendants knew that Morse held the note as agent, and not as owner, they had the right to presume that Morse held it as the agent of the true owner, and that he was authorized to receive the payments made.

The decree is therefore reversed, and judgment will be rendered upon the remand for the amount of the note and interest, less such sums as may be shown upon the new trial to have been paid Morse.