Jack BEDFORD and Jack D. Bedford, Inc. *v.* James FOX and
Patricia Fox, Husband and Wife

97-1425                                              970 S.W.2d 251

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Lisle Law Firm, P.C.*, by: *Chris Lisle*, for appellants.

*Everett & Mars*, by: *Thomas A. Mars*, for appellees.

Robert L. Brown, Justice. This case involves the issues of (1) whether a contract is usurious, and (2) assuming it is, whether the appellees, James Fox and Patricia Fox, are estopped from raising the usury claim. Because we are convinced that the proof clearly supports an estoppel defense, we reverse and remand.

On January 13, 1997, James Fox and Patricia Fox, who are husband and wife, filed an amended complaint for declaratory judgment against appellants Jack Bedford and Jack D. Bedford, Inc. The Foxes alleged that they entered into an agreement with Color Mate Photo, Inc., on March 18, 1992, to purchase the photography business owned by that corporation. Color Mate Photo, Inc., was owned by Jack Bedford. The name of the corporation was subsequently changed to Jack D. Bedford, Inc. According to the Foxes, Bedford knew that the interest rate charged on two installment promissory notes executed on that date exceeded what is permissible under Article 19, § 13 of the Arkansas Constitution, as amended by Constitutional Amendment 60. The Foxes asserted that irrespective of this knowledge, the parties executed the agreement, and the Foxes paid the illegal interest required under the notes. The Foxes asked for a judgment declaring the notes usurious and void as to the unpaid interest plus an award of twice the amount of the interest paid.

At trial, the testimony was in conflict. Bedford testified that in November 1991, he and the Foxes agreed that the photography business would be sold for the sum of $350,000. He testified that

his attorney, David Nixon, prepared the March 18, 1992 "Final Agreement for Sale of Business" as well as the two promissory notes dated that same date, one executed in favor of Color Mate Photo, Inc., now Jack D. Bedford, Inc., in the amount of $245,000, and the other in favor of Jack Bedford in the amount of $30,000. The two notes represented part of the purchase price, which Bedford was financing himself. He testified that the sales agreement stated that it was effective as of November 6, 1991. However, he acknowledged that the promissory notes did not refer to any date other than March 18, 1992, which was the date of their execution by the Foxes.

Bedford further explained that prior to March 18, 1992, there had been discussions among the parties about the lawful rate of interest in Arkansas because Bedford recognized that the Federal Reserve Discount Rate had fallen since November 1991.[1] Bedford testified that he approached the Foxes about raising the principal and lowering the interest rate for the loans because he knew that the 10% interest rate was no longer legal. He maintained that the parties continued with the agreement under the belief that the 10% interest rate had been "locked in" under the preliminary November 6, 1991 sales agreement. Bedford concluded that the reference to the date of November 6, 1991, as the effective date in the March 18, 1992 sales agreement controlled for purposes of the appropriate interest rate under the two promissory notes. According to Bedford, he first learned that the Foxes were claiming that the 10% interest rate was illegal in January 1997, when he was served with the complaint which initiated this litigation.

David Nixon, Bedford's attorney, testified that he was employed by Bedford in February 1992 and that he knew the Foxes and Bedford had reached a preliminary agreement on November 6, 1991. He explained that he knew the Federal Reserve Discount Rate on March 18, 1992, would render the 10% interest rate usurious and for that reason he intended to make November 6, 1991, the effective date of the promissory notes. He

---

[1] The parties stipulated that the Federal Reserve Discount Rate fell from 5% on November 6, 1991, to 3.5% as of March 18, 1992.

admitted, however, that the promissory notes themselves did not refer to the date of November 6, 1991, and that they also failed to incorporate by reference the March 18, 1992 sales agreement.

Nixon emphasized, however, that he drafted the March 18, 1992 sales agreement with three references to the November 6, 1991 preliminary agreement, and that the Foxes' counsel, James McCord, agreed that November 6, 1991, was the effective date of the agreement. McCord, according to Nixon, never broached to him any misgiving that the 10% interest rate would be illegal if executed in that fashion. Nixon also explained that he believed he was merely memorializing an agreement that had been reached in November 1991.

James Fox testified that he and his wife moved from Iowa to Fayetteville in March 1991. Prior to that date, an Iowa attorney, Mark Beckman, was responsible for drafting the preliminary agreements, but after that, the Foxes employed James McCord. Fox testified that he was informed for the first time at closing on March 18, 1992, that Bedford could not legally charge a 10% interest rate under Arkansas's usury laws as of that date. He stated that Bedford offered to raise the purchase price to $400,000 as a solution and to lower the interest rate. Fox testified that he rejected the offer. He added that he was first told by a third-party banker that the two promissory notes contained an illegal rate of interest in the Fall of 1992, when he attempted to borrow money from McIlroy Bank and Trust to purchase equipment. He was later told by the same banker that the interest rate was illegal in 1994 and 1995. He also admitted that James McCord informed him that the interest rate was illegal on March 18, 1992. Despite this knowledge, Fox stated that he continued making monthly payments on the notes until 1997.

Fox further admitted that he calculated as of December 31, 1996, that he owed Bedford $226,841.84 in principal but that he could recover $240,575.36, or twice the amount of the interest that had been paid up to that point, which was $120,286.18. This would have yielded the Foxes a net recovery as of that date in the amount of $13,733.52. A year earlier at the end of 1995, he calculated that they had paid $96,935.98 in interest, which multiplied

twice would render a recovery of $193,871.96. At that point, the Foxes still would have owed Bedford and his corporation a net amount of $45,081.63. Therefore, because the Foxes made payments on the notes for an additional year, they went from owing Bedford approximately $45,000 at the end of 1995 to a net recovery of approximately $13,000 at the end of 1996, if they asserted a claim of usury. He also testified that he was not aware that the reference in the March 18, 1992 sales agreement to the effective date of November 6, 1991, had legal significance for purposes of the interest rate.

The trial court entered its order and determined that the interest rate on the two promissory notes was usurious as of March 18, 1992, which was the date the court found to be the date of the contract. The court entered judgment for the Foxes in the amount of $231,009.96 against Jack D. Bedford, Inc., which was twice the amount of interest paid on the $245,000 note, and judgment against Bedford in the amount of $28,286.96, which was twice the amount of interest paid on the $30,000 note. The trial court also determined that the defense of estoppel was not applicable against the Foxes because although all parties knew the 10% interest rate was usurious, the Foxes were not responsible for creating the infirmity. Bedford and Jack D. Bedford, Inc., appeal from the trial court's order.

We need not address Bedford's first issue relating to whether the March 18, 1992 sales agreement constituted the contract as opposed to the November 6, 1991 preliminary agreement. Even assuming that the agreement was finally struck on March 18, 1992, and, thus, was usurious, we hold that the Foxes were estopped by their actions to raise a usury defense.

In order to prove estoppel, the party asserting the defense must prove the following elements: (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. *City of Russellville v. Hodges*, 330 Ark. 716, 957 S.W.2d 690

(1997); *Arkansas Dep't of Human Servs. v. Estate of Lewis*, 325 Ark. 20, 922 S.W.2d 712 (1996).

Furthermore, we have said that a debtor *may* be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order to take advantage of the creditor. *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991); *Ford Motor Credit Co. v. Hutcherson*, 277 Ark. 102, 640 S.W.2d 96 (1982); *Blanks v. American Southern Trust Co.*, 177 Ark. 832, 9 S.W.2d 310 (1928). In *Blanks*, this court said:

> If the transaction was usurious, he [the debtor] should not have countenanced it in order to aid his company in selling a large block of its preferred stock to the bank of which he was a director.

177 Ark. at 839, 9 S.W.2d at 313.

We initially focus on the date of March 18, 1992, and have no doubt that Bedford and the Foxes knew that there was a problem with usury on that date and that efforts were being made to correct the problem. Indeed, James Fox testified to that effect. The trial court did find that both parties knew the March 18, 1992 sales agreement was usurious as of that date, but the critical point to our way of thinking is the fact that the March 18, 1992 sales agreement mentions three times that the agreement was effective as of November 6, 1991:

> WHEREAS the parties hereto originally entered into an agreement for purposes hereof on November 6, 1991;
>
> WHEREAS, the parties hereto have executed various and sundry Preliminary Agreement and Modifications thereto since the original agreement was formed on November 6, 1991;
>
> . . .
>
> IN WITNESS WHEREOF, the parties have executed this agreement the date first above written, effective as of November 6, 1991.

Unquestionably, inclusion of this language was driven by a desire to obviate the usury concerns of the parties.

Both Bedford and David Nixon testified to that effect and, again, James Fox testified that he knew about the usury problem

and efforts to correct it. Where the parties differed in their testimony is that Bedford and Nixon were adamant in their belief that both sides understood the problem had been resolved by fixing the effective date as of November 6, 1991, while James Fox hedged on this point.

██ In applying the law of estoppel to these facts, we believe that all of the elements for establishing estoppel against the Foxes were present. The Foxes knew the March 18, 1992 sales agreement was usurious, as the trial court found. The Foxes intended to purchase Bedford's photography business by signing the March 18, 1992 sales agreement and the two promissory notes, albeit the interest rates for the notes were usurious as of that date. Bedford clearly believed that by making November 6, 1991, the effective date of the agreement, usury was no longer an issue. According to Bedford's attorney at the time, David Nixon, both he and the Foxes' attorney, James McCord, agreed that reference to the effective date of November 6, 1991, cured the problem. And Bedford relied on the Foxes' willingness to close the sales agreement on March 18, 1992, in a belief that the interest rate was not usurious. Indeed, this belief was confirmed over the next five years, as the Foxes continued to make their installment payments. Added to the mix is a hint of subterfuge in that James Fox apparently thought, as evidenced by his usury calculations, that at any time he could rise up, assert usury, and recoup twice the interest paid. He waited until he could net a profit to do this. James Fox's own testimony cements our conclusion that estoppel was a proven defense.

██ The trial court in its ruling from the bench did find that both Bedford and the Foxes knew the March 18, 1992 agreement was usurious. But that finding does not examine the collateral issue of whether Bedford legitimately believed that he had resolved the matter with references to a November 6, 1991 effective date. We hold that the trial court clearly erred in finding that the elements of estoppel were not met by Bedford.

██ Moreover, we believe the trial court erred in ruling that the person to be estopped "must have created the infirmity." Our cases do not mandate such a requirement but only say that a

debtor *may* be estopped from asserting usury if that debtor created the infirmity. *See McElroy v. Grisham, supra; Ford Motor Credit Co. v. Hutcherson, supra.* The seminal case on this point, *Blanks v. American Southern Trust Co., supra,* merely established that a debtor may be estopped if the debtor "countenances" a transaction known to be usurious. That certainly occurred in the instant case.

We reverse the judgment of the trial court and remand for entry of a judgment consistent with this opinion.