Shawn HICKMAN  *v.*  Chester J. COURTNEY

04-1065                                                    203 S.W.3d 632

Supreme Court of Arkansas
Opinion delivered February 17, 2005

---

6

*Bruce D. Switzer*, for appellant.

*Haddock & Tisdale, P.A.*, by: *James W. Haddock*, for appellee.

BETTY C. DICKEY, Justice. This is a usury case arising from a loan agreement between Shawn Hickman and Chester J. Courtney. Ms. Hickman sued Mr. Courtney in the Ashley County Circuit Court, alleging that the parties' loan agreement imposed a usurious rate of interest and requesting appropriate relief. On appeal, Ms. Hickman argues that the trial court's determination that Mr. Courtney lacked the requisite intent to commit usury is clearly erroneous. We agree, and reverse and remand.

*Facts*

Mr. Courtney had been a Certified Public Accountant for over forty years and, anticipating retirement, decided in 2002 to sell his accounting firm to Ms. Hickman, his employee of three years. Ms. Hickman initially agreed to buy the firm outright for $253,000, but was unable to obtain financing for that amount. The parties then agreed that Ms. Hickman would make a down payment of $40,000 and pay the balance in monthly installments. Mr. Courtney's lawyer prepared a loan agreement reflecting this arrangement. The agreement specifically provided that, after Ms. Hickman's down payment had been made, "the remaining balance shall be paid in 120 monthly installments, with each such payment to be made on or before the 10th day of each month beginning on February 10, 2002. The amount of each installment shall be calculated annually by amortizing the balance of the purchase price over ten years at the then prevailing commercial loan rate. The parties agree that the payment shall be $2,640.90 for the first twenty-four (24) months."

Ms. Hickman made full payments pursuant to the agreement until September of 2002, and then, per the parties' agreement, made reduced payments of $1,800[1] from October of that year through February of 2003. Ms. Hickman first discovered that she was being charged a usurious rate of interest in January of 2003, when her bank, as part of a loan renewal process, requested that she provide it with an amortization schedule for her loan with Mr. Courtney and a 1099 tax form reflecting the interest she had paid Mr. Courtney during the year. These documents indicated that Ms. Hickman was paying an annual percentage rate of 8.5% on her loan with Mr. Courtney. At the time the agreement was made, the maximum interest rate allowed under Arkansas law was 6.25%. After learning about these rates, Ms. Hickman sued Mr. Courtney, claiming that the contract was usurious and asking the trial court to reform the contract to void the usurious unpaid interest and award her $38,325.24, an amount equal to twice the interest she had already paid on the loan.

The trial court ruled in favor of Mr. Courtney, explaining that Ms. Hickman's claim had failed because she had not met her burden of clear and convincing proof with respect to Mr. Court-

---

[1] While the trial court's order states that Ms. Hickman made reduced payments in the amount of $1,600, it is clear from the record that the actual amount was $1,800.

ney's intent to violate the law. The trial court observed that the agreement did not expressly state a rate of interest to be charged but said that it interpreted the phrase "at the prevailing commercial rate" to mean any rate of interest that does not exceed the maximum lawful rate. The trial court acknowledged that the interest rate reflected in the amortization schedule was a clearly usurious 8.5%, but said that it did not view that rate as controlling, because the evidence did not establish that Mr. Courtney had either created the amortization schedule or that the schedule was consistent with his intent. The trial court reformed the contract to specify that the rate of interest will not exceed the maximum lawful rate and ordered that any interest already paid in excess of this rate be applied to future unpaid interest.

Ms. Hickman appealed, arguing that the trial court's determination that Mr. Courtney lacked the requisite intent to commit usury was clearly erroneous.[2] In response, Mr. Courtney argues that Arkansas' usury provision is either unconstitutional or invalid because the provision bases the maximum lawful rate of interest on the Federal Reserve Discount Rate, and the Federal Reserve Discount Rate no longer exists.

## Standard of Review

While a trial court's conclusions of law are reviewed *de novo*, we recognize the lower court's superior position to assess the facts and will not reverse its factual findings unless they are clearly erroneous. A finding of fact made by a trial court sitting in equity is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been made. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003). When the intent to commit usury is not apparent on the face of the challenged document, the question of whether a lender possessed the requisite intent is for the finder-of-fact to decide. *Id.*

---

[2] Ms. Hickman also asserts that the trial court's holding that Mr. Courtney lacked the intent to commit usury was a mistake of law. Whether the requisite intent exists, however, is a finding of fact and not a legal conclusion. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003). Ms. Hickman does not argue that the judge misinterpreted or misapplied the law, but that the court's ultimate conclusion was wrong because the evidence shows that Mr. Courtney did intend to charge a usurious rate of interest. This is an argument that the court's finding was clearly erroneous, not that it was a mistake of law.

## Usury

■ Arkansas' usury law is set out in our Constitution: "The maximum lawful rate of interest on any contract . . . shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Ark. Const. Art. 19, § 13(a)(i) (1987). Usurious contracts are void as to the amount of unpaid interest in excess of the maximum lawful rate, and a borrower may recover twice the amount of usurious interest already paid on the loan. Ark. Const. Art. 19, § 13(a)(ii). For a contract to be usurious, it must be so at the time it is entered into. *Smith v. MRCC Partnership*, 302 Ark. 547, 792 S.W.2d 301 (1990). The Federal Discount Rate at the time this contract was entered into was 1.25%, so the maximum lawful rate of interest for Ms. Hickman's and Mr. Courtney's loan agreement was 6.25%.

■ Because the "penalty for a usurious transaction is indeed heavy," the plaintiff has the burden of proving by clear and convincing evidence that the lender possessed the intent to commit usury. *Haley v. Greenhaw*, 235 Ark. 481, 360 S.W.2d 753 (1962). Usury will not be presumed, imputed, or inferred where an opposite result can be fairly and reasonably reached. *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991). The intent that is required, however, is not an intent to violate the law, but merely the intent to charge a rate of interest that proves to be usurious. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003). In ascertaining intent, the fact-finder must look beyond the four corners of the challenged agreement "to determine, considering all of the attendant facts and circumstances, if the contract is usurious in effect." *Id.*

In this case, Ms. Hickman had the burden of proving by clear and convincing evidence that Mr. Courtney intended to charge an interest rate in excess of 6.25%, the maximum lawful rate at the time this agreement was made. The trial court did not believe that the 8.5% rate in the amortization schedule was reflective of Mr. Courtney's intent, because the evidence did not prove that the schedule was either created or approved of by Mr. Courtney. The amortization schedule was not, however, the only evidence to indicate that Mr. Courtney was aware that he was charging an 8.5% rate of interest. Mr. Courtney testified on more than one occasion that he intended the interest rate on his loan with Ms. Hickman to exceed the 7% rate that he was paying on another

note, saying that Ms. Hickman "agreed to pay a percent and a half more than [the 7%] I was paying at the bank," and that this was "the only reason I financed." Mr. Courtney's wife testified to the same effect.

Ms. Hickman also introduced into evidence a tax return and a 1099 tax form from the year 2002, in which Mr. Courtney represented that he was receiving 8.5% in interest on his loan with Ms. Hickman. An 8.5% rate of interest on this loan would yield an annual total of $16,191, the exact amount that Mr. Courtney reported on his tax return as income paid by Ms. Hickman. On the 1099 form, Mr. Courtney made handwritten corrections amending the amount of interest income to reflect this same amount. These documents were introduced at trial without objection from Mr. Courtney. The way a lender treats a transaction on his tax returns can be an important indicator of whether the lender has the intent to commit usury. See *Carter*, 351 Ark. at 653; *Haley v. Greenhaw, supra*, 235 Ark. 481. Mr. Courtney was a C.P.A. with over forty years of experience, holding advanced degrees in both business and accounting. At the time of the trial, he was working as a tax return preparer. Mr. Courtney's professional experience with tax returns and interest rates suggests that the representations he made on his tax forms were accurate reflections of his intent.

The intent to commit usury is clearly evidenced by these tax forms as well as by Mr. Courtney's own testimony that he intended to charge 8.5% in interest on Ms. Hickman's loan. This is especially true in light of Mr. Courtney's professional background and experience. In fact, the only evidence that Mr. Courtney might not have intended to charge 8.5% is the agreement's somewhat ambiguous phrase "at the then prevailing commercial rate." While this language may not, in and of itself, evidence an intent to commit usury, the trial court is obligated to look beyond the four corners of the document at all the attendant circumstances to determine if the contract is usurious in effect. *Carter v. Four Seasons Funding Corp.*, 351 Ark. at 653. The circumstances clearly indicate that Mr. Courtney intended to charge a rate of interest that proved to be usurious. The trial court's holding to the contrary is clearly erroneous, and we remand for findings consistent with this opinion.

### Constitutionality of Arkansas's Usury Provision

■ Mr. Courtney argues that Arkansas' usury provision is either unconstitutional or invalid because the provision is based on the Federal Discount Rate, and the Federal Reserve Discount Rate no longer exists. Mr. Courtney's argument has no bearing on the outcome of this case, however, because a Federal Reserve Discount Rate was still in existence at the time that the loan agreement was made. See *Hartford Fire Insurance Company v. Sauer*, 358 Ark. 89, 186 S.W.3d 229 n.2 (2004).

■ At any rate, this court will not address the merits of this argument on appeal, because the issue was not ruled on by the court below. This court has repeatedly held that the "[f]ailure to obtain a ruling, even with respect to a constitutional question, precludes the issue on appeal." *State Farm Fire & Casualty Company v. Ledbetter*, 355 Ark. 28, 129 S.W.3d 815 (2003); *Technical Services of Arkansas, Inc. v. Pledger*, 320 Ark. 333, 896 S.W.2d 433 (1995). In this case, the trial court's order did not include a ruling on the constitutionality of Article 19, Section 13, and Mr. Courtney did not seek to set aside the order to obtain a ruling on the issue. See *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002). Because there was no ruling below, this court is procedurally barred from addressing the issue on appeal.

Reversed and remanded.