Howard & Zettie NASH, Individually &
as Guardians of Roderick Nash *v.* Brad HENDRICKS,
Lamar Porter, Brad Hendricks Law Firm, P.A.

06-968                                                     250 S.W.3d 541

Supreme Court of Arkansas
Opinion delivered February 22, 2007

---

*Larry C. Wallace*, for appellants.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Robert L. Henry* and *Cynthia W. Kolb*, for appellees.

Jim Hannah, Chief Justice. Appellant Howard Nash, individually, and as special administrator for the Estate of Roderick Nash, Deceased, appeals the order of the Pulaski County Circuit Court, Third Division, granting summary judgment in favor of appellees Brad Hendricks, Lamar Porter, and Brad Hendricks Law Firm, P.A. (collectively referred to as Hendricks Law Firm or law firm). On appeal, Mr. Nash argues that the circuit court (1) abused its discretion in refusing to permit a separate hearing to hear evidence on a motion for recusal prior to ruling on the merits of a summary-judgment motion, where an evidentiary hearing had been requested, (2) erred in granting summary judgment as a matter of law in a legal-malpractice lawsuit where legal experts had submitted disputing affidavits as to the defendant lawyers' breaches of the applicable standard of care, and (3) erred in granting Hendricks Law Firm's motion for summary judgment on statute-of-limitations grounds. Although this case was originally filed in the court of appeals, we assumed jurisdiction of the case as it involves questions that arise

under the power of the supreme court to regulate the practice of law. *See* Ark. Sup. Ct. R. 1-2(a)(5). We affirm.

The facts underlying the case are as follows. Roderick Nash was a military serviceman who was injured in a motor vehicle accident while off his marine base in California. Roderick suffered severe injuries, including trauma to his brain. He was later transported to Arkansas for rehabilitation, diagnosis, and treatment.

On January 17, 1995, Roderick underwent a brain biopsy procedure at McClellan Veterans Administration Hospital in Little Rock. The procedure was performed by Charles Teo, M.D., and assisted by Anthony Russell, M.D. However, the brain biopsy was performed on the wrong side. After the biopsy was performed, Warren Stringer, M.D., interpreted radiological studies of Roderick's brain. Subsequently, Howard and Zettie Nash, Roderick's parents, were appointed as co-guardians of Roderick's estate and retained the Brad Hendricks Law Firm to represent their son in a medical-malpractice lawsuit against Drs. Teo, Russell, and Stringer.

A medical-malpractice complaint naming Drs. Teo, Russell, and Stringer as defendants was filed in Pulaski County Circuit Court on December 31, 1996. According to the Hendricks Law Firm, the complaint was filed in Pulaski County Circuit Court to determine if the physicians were government employees or private physicians when they provided services at the VA. The law firm states that the complaint was not intended to file a federal-tort-claim lawsuit.

The lawsuit was later removed to the United States District Court, Eastern District of Arkansas, and in an order entered on August 11, 1997, the district court found that Drs. Teo and Russell were employed by the VA and were acting within the scope of their employment during the relevant time of the alleged medical malpractice. Accordingly, the district court concluded that the United States of America must be substituted as the proper defendant in the place of Drs. Teo and Russell. The district court then found that an administrative-tort claim had not been made to the VA, as required by 28 U.S.C. § 2675(a).[1] Concluding that it did not have subject-matter jurisdiction over the United States, the district court dismissed the case. The district court also deter-

---

[1] Title 28, section 2675(a) of the United States Code provides in part:

mined that it lacked jurisdiction over Dr. Stringer, who was determined to be a private physician, and remanded the case against him back to the circuit court.

The Hendricks Law Firm did not file an administrative-tort claim, nor did the law firm commence prosecution of the suit against Dr. Stringer. Instead, the law firm terminated its attorney-client relationship with the Nashes. In a letter to the Nashes, attorney Lamar Porter explained that the federal court had terminated the claims against Drs. Teo and Russell, based on the fact that they were employees of the federal government at the time of the alleged malpractice. Porter stated that the law firm saw no reason to appeal that decision and that if the Nashes desired to appeal, then they should contact another attorney. The letter also explained that the federal-court order of dismissal was entered on August 12, 1997; thus, the Nashes would have thirty days from that date to appeal.

Additionally, Porter stated that the case against the radiologist, Dr. Stringer, was being sent back to state court. Porter stated that, because Dr. Stringer did not interpret the x-rays until after the biopsy had already been completed, the firm would be nonsuiting the case in state court. Finally, Porter explained that the nonsuit would allow the case against Dr. Stringer to be refiled within one year in the event the Nashes hired another attorney to pursue the case.

The time for filing an administrative-tort claim subsequently lapsed. The Nashes then retained counsel to pursue a legal-malpractice lawsuit in Pulaski County Circuit Court and had a guardian appointed for Roderick. The suit was filed on August 5, 2004. Discovery was taken, and during that time, the Nashes learned that the circuit judge's father had previously represented one of the appellees in a legal-malpractice lawsuit.

The Hendricks Law Firm filed a motion for summary judgment on February 8, 2006. The Nashes responded and later moved for recusal, requesting an evidentiary hearing and an

---

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency. . . .

opportunity to conduct additional discovery. The law firm moved to strike the expert affidavit submitted by the Nashes. A hearing was held on the various motions on May 1, 2006. On May 15, 2006, the circuit court denied the Nashes' motion for recusal and request for evidentiary hearing, denied the motion for additional discovery, denied the motion to strike the Nashes' expert affidavit, and granted summary judgment in favor of the Hendricks Law Firm.

In the order granting summary judgment, the circuit court ruled that the Nashes could not have prevailed on their medical-malpractice lawsuit due to the application of the *Feres*[2] doctrine. Further, the circuit court determined that the statute of limitations had run on the legal-malpractice lawsuit.

On May 16, 2006, Roderick died. An order was entered on June 12, 2006, substituting Howard Nash as special administrator and reviving the lawsuit. This appeal followed.

Mr. Nash first argues that the circuit court abused its discretion in refusing to grant a separate hearing to hear evidence on a motion for recusal prior to ruling on the merits where an evidentiary hearing had been requested. Mr. Nash filed a motion for recusal and request for evidentiary hearing on April 28, 2006, at 2:53 p.m., which was the Friday afternoon prior to the Monday, May 1, 2006 hearing on the summary-judgment motion. The motion for recusal was based on the stated facts that appellee Lamar Porter was previously represented by the Honorable James Moody, the circuit court judge's father, in a legal-malpractice action when both the Honorable James Moody and the circuit court judge were previously attorneys employed at the law firm Wright, Lindsey & Jennings. The circuit court denied the motion to recuse.

On May 1, 2006, prior to hearing arguments on the Hendricks Law Firm's summary-judgment motion, the circuit court heard arguments on the recusal motion, and the following colloquy took place between counsel for Mr. Nash and the circuit court:

> THE COURT: Well, you had indicated that you had some request for an evidentiary hearing. I'm not sure what you are requesting because I think it's my understand-

---

[2] *Feres v. United States*, 340 U.S. 135 (1950). *See* discussion of the *Feres* doctrine *infra*.

ing that the first time that my father's involvement in this case would have come to your attention would have been October of '04, in response to interrogatories.

COUNSEL: That's correct.

THE COURT: So we're a year and some months later. And so I'm prepared for you to put on your record whatever you want to put on, to bring something that's not in the pleadings to my attention regarding the recusal. Are you prepared to do that at this time?

COUNSEL: I'm not—I didn't bring any witnesses with me today, your Honor. But I think that Mr. Nash is entitled to take the deposition of Mr. Lamar Porter and anyone else in that law firm as to who was representing them during this period of time.

THE COURT: Well, Mr. Wallace, I would agree. But you've had a year—over a year to do that. And I don't think it's appropriate to bring up that issue on the eve of a motion for summary judgment to delay those proceedings when you've had ample time to do that, because I'm not aware of anything new that's come up in your pleadings since the response in, I believe, October of 2004 that my father had previously represented Mr. Porter.

COUNSEL: That's correct, your Honor.

THE COURT: And so I guess my question is, why haven't you done something before?

COUNSEL: Because we haven't been before this Court on a motion for summary judgment until today.

THE COURT: I understand that. But you knew I was going to be the judge in this case on the day you filed the lawsuit.

COUNSEL: Your Honor, Mr. Nash has no problem, and he would waive any question about you serving as judge if we were not here today at this hour on their motion for summary judgment. They're asking you to rule on a matter of fact.

THE COURT: Well, I am going to give you an opportunity to put on whatever evidence you have today, but I'm not going to postpone this hearing pending discovery that you might make on an issue that you've been aware of for a year and a half. So I will give you that opportunity to do that now, and I understand that you may not be prepared to do that.

I will state for the record, if it will help Mr. Nash, set his mind at ease, that it was not until the filing of this motion that I knew of anything about my father's representation of Lamar Porter nor, to my recollection, was I in any way involved in that case. . . .

I am not inclined to recuse just on the fact that roughly in excess of 10 years ago, my father represented somebody in a case that I wasn't familiar with. I'm saying those [sic] in an effort to supplement your evidentiary situation, because I know I can't be deposed. But I feel it important for Mr. Nash's state of mind that he knows that I knew nothing about any of those things.

My father has been on the bench for 10 years, so I can tell you it was in excess of that that this representation would have happened. And I am pretty confident that that representation, at least to my knowledge, didn't have anything to do with the Nash[e]s, did it? I don't know.

COUNSEL: No, it did not, your Honor.

THE COURT: So—

COUNSEL: Your Honor, as I read the Dolphin case, in Chief Justice Arnold's opinion, I'm entitled to take their deposition on that issue.

THE COURT: Yes, sir.

COUNSEL: And I would—

THE COURT: And I guess my position would be, yes, you are. But you've waived that right by waiting a year and

a half to do so, if we need—if we need—if I need to make a ruling on that. I acknowledge that you should be able to do that. But I don't know that you can wait until the Friday before a Monday summary judgment when you've had that information for roughly—well, you've known since February, I guess, that the motion for summary judgment has been filed.

COUNSEL: Yes, your Honor.

THE COURT: And a year and a half since that information has given rise and you knew I was going to be making some rulings in this case, evidentiary or otherwise at trial.

COUNSEL: Yes, sir.

THE COURT: So I just want to make that record and acknowledge that I agree, you should be able to make some kind of discovery. But it should have been done prior to [to]day. So the motion for recusal and request for a continuance of this matter will be denied.

A judge is presumed to be impartial. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001). The party seeking recusal must demonstrate bias. *Id*. A hearing is necessary where requested and where there is more than a conclusory allegation that a judge is biased or otherwise subject to recusal. *See Stilley v. Fort Smith Sch. Dist.*, 367 Ark. 193, 238 S.W.3d 902 (2006).

Judges must refrain from presiding over cases in which they might be interested and must avoid all appearances of bias. *Dolphin v. Wilson*, 328 Ark. 1, 942 S.W.2d 815 (1997). However, we will not reverse a judgment on the basis of a trial judge's decision not to disqualify unless the judge has abused his or her discretion. *Id*. To decide whether there was an abuse of discretion, we review the record to determine if any prejudice or bias was exhibited. *Id*.

■ Here, the circuit court gave Mr. Nash the opportunity to present evidence prior to the hearing on summary judgment; however, Mr. Nash had no evidence to present. Although Mr. Nash knew of the prior attorney-client relationship between one of the appellees and the circuit judge's father over a year prior to the filing of the motion, he waited until the last business day prior

to the summary-judgment hearing to file the recusal motion. Despite the fact that the circuit judge concluded that the recusal motion was not timely, in an effort to "set [Mr. Nash's] mind at ease," the circuit judge clearly set forth the reasons he did not have any prejudice or bias in the case and explained that he could fairly conduct a hearing on summary judgment. In sum, Mr. Nash has failed to demonstrate any prejudice or bias on the part of the circuit court. We hold that the circuit court did not abuse its discretion in denying Mr. Nash's motion for recusal.

We next turn to Mr. Nash's arguments regarding the circuit court's grant of summary judgment in favor of the Hendricks Law Firm. Summary judgment is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *See Vanderpool v. Pace*, 351 Ark. 630, 97 S.W.3d 404 (2003). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *City of Barling v. Fort Chaffee Redevelopment Auth.*, 347 Ark. 105, 60 S.W.3d 443 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002).

An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of a client. *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). To prevail on a claim of attorney malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages. *Id.* To prove damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Id.* In this respect, a plaintiff must prove a case within a case, as he or she must prove the merits of the underlying case as part of the proof of the malpractice case. *Id.* An attorney is not liable to a client when, acting in good faith, he or she makes mere errors of judgment. *Id.* Moreover, an attorney is not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of the highest jurisdiction and on which reasonable attorneys may differ. *Id.*

To address Mr. Nash's arguments in this case, we must begin with a brief explanation of the FTCA and the *Feres* doctrine. The Federal Tort Claims Act of 1946, codified at 28 U.S.C. § 2671,

waived the traditional immunity from suit of the United States in its sovereign capacity. The FTCA provides for federal jurisdiction of claims against the United States for injuries negligently caused by government employees acting within the scope of their employment, if a private person would be liable under the same circumstances. 28 U.S.C. §§ 2674-2675 (2000). In a series of decisions now known as the *Feres* doctrine, the United States Supreme Court established a judicially-created exception to the waiver of sovereign immunity in the FTCA, holding that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950).

In *Feres*, a serviceman was killed by a fire in the barracks, and his estate sued the government for negligence. *Id.* at 136-37. Two companion cases, *Jefferson v. United States*, and *United States v. Griggs*, involved servicemen who were injured as a result of alleged negligence of Army doctors. *Id.* at 137. In barring all three claims, the *Feres* Court held that the United States remains immune from suit "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. The United States Supreme Court has explained that an injury "incident to service" is an injury that occurs "because of [a service member's] military relationship with the Government." *United States v. Johnson*, 481 U.S. 681, 689 (1987).

Mr. Nash argues that summary judgment cannot be granted as a matter of law in a legal-malpractice lawsuit where legal experts have submitted disputing affidavits as to the Hendricks Law Firm's breaches of the applicable standard of care. In support of their motion for summary judgment, the law firm submitted the affidavit of attorney William Martin. He opined that the *Feres* doctrine would bar Roderick's medical-malpractice claim. In response, Mr. Nash submitted the affidavit of attorney Peter Masciola who stated that the Hendricks Law Firm had failed to adequately research the law regarding the *Feres* doctrine and erroneously concluded that any FTCA claim by Roderick Nash would be barred because he was on active duty and received the subject medical care "incident" to his service. Mr. Nash contends that, based upon Masciola's affidavit alone, the question as to whether the *Feres* doctrine would have been a bar to filing a federal-tort claim and lawsuit on behalf of Roderick Nash is not an appropriate question for summary judgment. In other words, Mr.

Nash contends that the issue is a question of fact. We disagree. "The question of whether the *Feres* doctrine is applicable to the facts reflected in the record of a case is a question of law reviewed de novo." *Bowen v. Oistead*, 125 F.3d 800, 803 (9th Cir. 1997); *see also Jones v. United States*, 112 F.3d 299 (7th Cir. 1997); *Schomer v. United States*, 59 F.3d 26 (5th Cir. 1995). Thus, the question of whether the *Feres* doctrine bars suit is not a question for the jury, as Mr. Nash suggests, but a question of law to be determined by the circuit court.

In its letter order, the circuit court made the following findings:

> The Court is convinced that the following facts relevant to this motion are undisputed or, at least, have been decided as a matter of law by Judge Howard making them undisputable:
>
> 1. Dr. Teo and Dr. Russell were civilian doctors contracted to provide services to the federal government acting within the scope of their employment and, thus, were employees of the United States.
>
> 2. Roderick Nash was active duty military at the time of the alleged medical negligence.
>
> 3. The medical services he received were extended to him as a result of his military status.
>
> Taking these undisputed facts and applying them to the law as set down by the Eighth Circuit Court of Appeals . . . the Court finds that the application of the *Feres* doctrine would have barred any recovery by the plaintiffs for damages resulting from Dr. Teo's or Dr. Russell's negligence.
>
> This finding necessarily leads to the legal conclusion that the plaintiffs cannot sustain their burden of proof as a matter of law on the issue of proximate cause in the legal malpractice action. This ruling applies to any damages stemming from any action against Drs. Teo or Russell.
>
> Next, the defendants have moved for summary judgment on any claim for damages resulting from the failure of the defendants to properly pursue the plaintiffs' claim against Dr. Stringer. The

plaintiffs were required to meet proof with proof on the issue of Dr. Stringer's negligence but candidly admitted to a lack of such proof at the hearing.

Since there is no proof upon which a fact finder could find negligence on the part of Dr. Stringer, the defendants' motion for summary judgment on the claim for damages resulting from Dr. Stringer's negligence is granted.[3]

We must now determine whether the circuit court clearly erred in concluding that the *Feres* doctrine is a bar to suit in the instant case. The law firm argues that, because the medical-malpractice injury of Roderick Nash was clearly incident to service, any administrative claim filed on his behalf would have failed pursuant to the *Feres* doctrine.

Courts have applied the *Feres* doctrine to bar medical-malpractice claims that arose from treatment by government doctors of active-duty personnel. In *Cutshall v. United States*, 75 F.3d 426 (8th Cir. 1996), the Eighth Circuit held that the claims of Corporal Cutshall, whose cancer was not discovered while under-going treatment at a Navy medical facility, were barred by the *Feres* doctrine. In reaching its holding, the federal court found the following cases dispositive:

> In *Lampitt v. United States*, 753 F.2d 202 (8th Cir.) (per curiam), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3505 (1985), this court held that *Feres* barred a medical suit brought by a serviceman, although the alleged tort had arisen when the serviceman was on convalescent leave. The serviceman had claimed Navy physicians had negligently performed surgery on him and had argued his injuries did not arise out of activity incident to service because he was not on active duty. *Id.* at 703. This court noted that the two companion cases to *Feres* related to medical malpractice where no recovery was allowed, and that courts have adhered to the view that surgical malpractice in the military comes within the bar of the *Feres* doctrine. *Id.* This court concluded that "[t]he bottom line is that [the serviceman] seeks recovery for injury caused by the Navy doctors' negligence, both in their own conduct of the surgery and in their failure to secure the participation of [a civilian physician.] For that he cannot recover." *Id.* at 703.

---

[3] Mr. Nash does not dispute the findings with respect to Dr. Stringer. Accordingly, our analysis will be confined to the claims against Drs. Teo and Russell.

In *Bowers v. United States*, 904 F.2d 450 (8th Cir. 1990), this court held that *Feres* barred a medical malpractice claim by an Air Force recruit. The *Bowers* plaintiff had cancer which was not diagnosed during a pre-induction physical at a military hospital, and his cancer continued untreated. *Id.* at 451. We concluded that *Johnson* required us to hold that the plaintiff's claim was barred under *Feres*, even though no military benefits were available to the plaintiff who was not a service member at the time of the alleged negligence. *Id.* at 451. We concluded that "a court decision that the physicians who examined [the plaintiff] were negligent would have a direct effect upon military judgments and decisions. . . . [A]n effect on the allocation of military resources [which] is precisely the kind of thing that the *Feres* doctrine is supposed to prevent." *Id.* at 452.

*Cutshall*, 75 F.3d at 428-29.

Mr. Nash relies on *C.R.S. v. United States*, 761 F. Supp. 665 (D. Minn. 1991), where the court held that the *Feres* doctrine was not a bar to claims brought by plaintiffs arising out of a medical-malpractice incident even though one of the plaintiffs was on "active duty" at the time of the incident. In *C.R.S.*, a former member of the National Guard, his wife, and their child brought claims under the FTCA, alleging that they contracted AIDS due to the negligence of the United States in screening blood for HIV and in failing to notify the service member that he received infected blood. The court focused on three rationales underlying the *Feres* doctrine: that a uniform federal law regarding suits arising from military service is needed owing to the "distinctively federal" relationship between the government and its military personnel; that suits for service-related injuries are prohibited because such injuries are presumed compensated by benefits provided by the Veterans' Benefits Act; and that permitting such suits would imperil decisions about national security and military missions. *C.R.S.*, 761 F.Supp. at 667-68 (citing *Feres, supra,* and *Johnson, supra*). The court held that, because the claims "failed to invoke the three rationales supporting the *Feres* doctrine, the plaintiffs' claims are not barred." *Id.* at 668.

Mr. Nash argues that *C.R.S.* is clear authority for the proposition that the circuit court in this case cannot rule as a matter of law that Roderick Nash did not have an underlying FTCA

claim.[4] We disagree. In light of the decisions of the Eighth Circuit Court of Appeals, we believe that Roderick Nash's injury during surgery was incident to service; therefore, Mr. Nash's claim for medical malpractice is barred by the *Feres* doctrine. Thus, we hold that the circuit court did not clearly err in concluding that the *Feres* doctrine barred suit in this case. It follows that, because Mr. Nash could not have prevailed on his medical-malpractice claims, he cannot prove that, but for the Hendricks Law Firm's negligence, the outcome of the case would have been different. Therefore, Mr. Nash's legal-malpractice claim must fail. Because we have concluded that the *Feres* doctrine is applicable in this case, we need not address Mr. Nash's remaining arguments. We hold that the circuit court did not err in granting summary judgment in favor of the Hendricks Law Firm.

Affirmed.

---

[4] We note that the *C.R.S.* decision has been criticized. In *Minns v. United States*, 974 F. Supp. 500, 504 (D. Md. 1997), the court stated that *C.R.S.* "is called into question by the fact that the court allowed the serviceman to proceed on his own claim in contradiction to the clear holding of *Feres*." Further, the court stated:

> The persuasive value of the initial district court opinion in *C.R.S.* is further eroded by the fact that the district court later ruled that all of the claims against the United States were barred by the discretionary function exception to the FTCA. *C.R.S. v. United States*, 820 F. Supp. 449 (D. Minn. 1993). The Eighth Circuit upheld the district court's grant of summary judgment in favor of the United States based on the discretionary function exception without considering the earlier ruling on the *Feres* doctrine. *C.R.S. v. United States*, 11 F.3d 791 (8th Cir. 1993).

974 F.Supp. at 504.