2011 Ark. 69

**Jerry EVANS, Appellant**

v.

**Michael HAMBY and Walters Law Firm, P.A., Appellees.**

**No. 10–411.**

Supreme Court of Arkansas.

Feb. 17, 2011.

---

Peel Law Firm, P.A., Russellville, by: Richard L. Peel, for appellant.

Barber, McCaskill, Jones & Hale, P.A., by: Robert L. Henry, III, for appellees.

ROBERT L. BROWN, Justice.

Appellant Jerry Evans appeals a summary judgment in favor of appellees Michael Hamby and the Walters Law Firm, P.A. He raises two issues on appeal: (1) that the appellees failed to raise usury as a defense in the underlying trial on the promissory note; and (2) that the appellees failed to advise him to reinstate the corporate charter of Northwest Amusement Company, Inc. ("Northwest"), in light of a new act relating to revocation of a corporate charter for failure to pay state franchise taxes. Neither point has merit, and we affirm.

This appeal arises out of a legal malpractice claim filed by Jerry Evans against Hamby, who was then employed as an

attorney by the Walters Law Firm. Jerry Evans and his brother, Raymond Joe Evans (Joe), were the officers, directors, and sole shareholders of Northwest, an Arkansas corporation. On December 31, 1998, Northwest's corporate charter was revoked for failure to pay franchise taxes. Later, on February 25, 1999, Northwest signed a promissory note made payable to Luther Evans in the amount of $74,000.00, which consolidated several previous notes owed by Northwest to him.[1] The consolidated note had an interest rate of 10% per annum. According to Joe Evans and Doug Simmons, who was an accountant for Northwest, the $74,000 loan was not carried as a loan on the corporate books but was, instead, carried as a contribution to capital. In addition, there was no corporate authorization from Northwest approving the loan.

Northwest eventually went out of business. After that occurred, Jerry Evans began making payments on the consolidated note with personal checks. At some point, he stopped making payments altogether. Luther Evans then filed suit against Northwest, Joe Evans, and Jerry Evans for collection on the promissory note, and Jerry Evans hired Hamby and his firm to represent him in that action. During the trial, Hamby failed to assert the defense of usury on Jerry Evans's behalf and failed to advise him to reinstate the corporate charter of Northwest pursuant to Arkansas Code Annotated section 26–54–112, in order to limit his personal liability for corporate debts.

After a bench trial, Jerry Evans was held liable on the note and for costs and attorney's fees in the amount of $108,117.44. This judgment was affirmed by the court of appeals. *See Evans v. Evans*, No. CA06–517, 2007 WL 678556 (Ark.Ct.App. Mar. 7, 2007). In addition, Jerry Evans was awarded a cross-judgment against his brother Joe in the amount of $58,088.72, exclusive of additional interest and fees awarded, because Joe was also held personally liable on the debt to Luther Evans.[2] Joe Evans is not a party to this appeal.

Evans next sued Hamby and his firm for legal malpractice for not raising the usury and corporate-charter issues at trial. Cross-motions for summary judgment were filed by both sides. In the interim, a motion to intervene was granted for the "limited purpose of asserting the claim of the Luther Evans Estate on any recovery obtained by [Jerry Evans]."[3] Appellees' motion for summary judgment was granted by the circuit court, which disposed of Jerry Evans's claims against both Hamby and the Walters Law Firm.[4]

As a general rule, when reviewing a grant of summary judgment, the appellate court determines if summary judgment was appropriate based on whether the evidence presented supporting the summary judgment leaves a mate-

---

1. Luther Evans was the uncle of Joe Evans and Jerry Evans and had made several loans to Northwest in the past.

2. A default judgment was entered against both Northwest and Joe Evans prior to the November 7, 2005 trial. Northwest is not a party to this appeal.

3. Luther Evans died during the course of this litigation, and Larry Evans, the executor of his estate, filed the motion to intervene.

4. The final order did not specifically reference the intervenor's claim, but this court retains jurisdiction over the case because the intervention was clearly contingent on Jerry Evans's recovering before the circuit court, which he did not. Accordingly, there is no issue of finality.

rial question of fact unanswered. *DaimlerChrysler Servs. N. Am., LLC v. Weiss*, 360 Ark. 188, 200 S.W.3d 405 (2004). The appellate court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* at 193, 200 S.W.3d at 407.

In the instant case, the grant of summary judgment was based, in part, upon the circuit court's interpretation of Arkansas Code Annotated section 26–54–112, which concerns reinstatement of a corporate charter. The question of the correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *See id.*

We first address Hamby's failure to plead the defense of usury. An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of a client. *Nash v. Hendricks*, 369 Ark. 60, 250 S.W.3d 541 (2007). To prevail on a claim of attorney malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages. *Id.* To prove damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Id.* In this respect, a plaintiff must prove a case within a case, as the plaintiff must prove the merits of the underlying case as part of the proof of the malpractice case. *Id.* An attorney is not liable to a client when, acting in good faith, that attorney makes mere errors of judgment. *Id.* Moreover, an attorney is not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by the highest court of jurisdiction and on which reasonable attorneys may differ. *Id.*

It is undisputed that the interest rate on the promissory note at issue in the underlying case involving Luther Evans and Jerry Evans was 10% per annum. Furthermore, appellees conceded that the maximum interest rate allowable under Arkansas law on February 25, 1999, was 9.5%. Hamby claims, however, that this court will not presume usury if an opposite conclusion can fairly and reasonably be reached. *Davidson v. Commercial Credit Equip.*, 255 Ark. 127, 499 S.W.2d 68 (1973). He argues, in addition, that the promissory note had specific language that precluded the note from being usurious. He points specifically to the following provision in the note:

> Maker/s are aware that the constitution of the State of Arkansas establishes the maximum rate of interest which may be charged from time to time and are satisfied that the interest rate/s herein are not usurious. In the event it is later determined that the rate/s are, in fact, usurious, maker/s and sureties acknowledge that it is the result of mutual mistake of all parties and maker/s agree to pay interest hereon at the maximum rate determined to be legal at the date of making hereof.

Hamby further maintains that Jerry Evans would be estopped from claiming usury as a defense because he and his brother, Joe Evans, actually decided the interest rate on the note, and not Luther Evans, who was the payee. Jerry Evans counters that the contract-clause argument fails under current Arkansas law because the proper test for usury is not whether the lender intended to violate the usury law, but whether the lender knowingly entered into a usurious contract intending to profit by the methods used. *Smith v. Eisen*, 97 Ark. App. 130, 144, 245 S.W.3d 160, 172 (2006).

Arkansas's usury law is prescribed in our Constitution: "The maximum lawful rate of interest on any contract ... shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Ark. Const. art. 19, § 13(a)(i) (Repl.2004).[5] Usurious contracts are void as to the amount of unpaid interest in excess of the maximum lawful rate, and a borrower may recover twice the amount of usurious interest already paid on the loan. Ark. Const. art. 19, § 13(a)(ii). For a contract to be usurious, it must be so at the time it is entered into. *Hickman v. Courtney*, 361 Ark. 5, 10, 203 S.W.3d 632, 636 (2005) (citing *Smith v. MRCC Partnership*, 302 Ark. 547, 792 S.W.2d 301 (1990)). As already noted in this opinion, the Federal Discount Rate at the time this contract was entered into was 4.5%, so the maximum lawful rate of interest for the promissory note was 9.5%.

Because the "penalty for a usurious transaction is indeed heavy," the plaintiff has the burden of proving by clear and convincing evidence that the lender possessed the intent to commit usury. *Hickman*, 361 Ark. at 10, 203 S.W.3d at 636 (citing *Haley v. Greenhaw*, 235 Ark. 481, 360 S.W.2d 753 (1962)). When the intent to commit usury is not apparent on the face of the challenged document, the question of whether a lender possessed the requisite intent is for the finder of fact to decide. *Hickman*, 361 Ark. at 9, 203 S.W.3d at 635. Usury will not be presumed, imputed, or inferred where an opposite result can be fairly and reasonably reached. *Hickman*, 361 Ark. at 9, 203 S.W.3d at 635 (citing *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991)). The intent that is required, however, is not an intent to violate the law, but merely the intent to charge a rate of interest that proves to be usurious. *Hickman*, 361 Ark. at 9, 203 S.W.3d at 635 (citing *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003)). In ascertaining intent, the fact-finder must look beyond the four corners of the challenged agreement "to determine, considering all of the attendant facts and circumstances, if the contract is usurious in effect." *Id.* Summary judgment is appropriate in usury cases. *See, e.g., Evans v. Harry Robinson Pontiac–Buick, Inc.*, 336 Ark. 155, 983 S.W.2d 946 (1999) (affirming summary judgment based on a contract expressly charging interest rate of 18% per annum).

On its face, the promissory note in the instant case is usurious. The note calls for an interest rate of 10% per annum, when the usury rate under the Arkansas Constitution at the time the note was entered into prohibited interest over 9.5% per annum. If those were the only facts, then the circuit court would have clearly erred in granting summary judgment because a genuine issue of material fact existed surrounding Luther Evans's intent to commit usury. Hamby, however, points to estoppel as a second reason why summary judgment was appropriate. We agree.

This court has recognized that the doctrine of estoppel can apply to

---

5. In *Pakay v. Davis*, 367 Ark. 421, 241 S.W.3d 257 (2006), we recognized that the Federal Reserve Board abolished the Federal Reserve Discount Rate and substituted a different, but similar, measurement in its place. *Id.* at 426–27, 241 S.W.3d at 261 ("Thus, while the Federal Reserve Discount Rate has been abolished by the Federal Reserve Board, the Board adopted a gauge that can apply in its place."). The Federal Reserve Discount Rate was abolished effective January 9, 2003. *See* 12 C.F.R. § 201.4 (2003). Thus, the Federal Reserve Discount Rate was in effect at the time the promissory note at issue in this case was signed and must be used to determine whether the interest rate is usurious.

claims of usury. *Bedford v. Fox*, 333 Ark. 509, 970 S.W.2d 251 (1998). In order to prove estoppel, the party asserting the defense must prove these elements: (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. *Bedford*, 333 Ark. at 513, 970 S.W.2d at 254.

A debtor may be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order to take advantage of the creditor. *Id.* Joe Evans provided an affidavit stating that the interest rate was selected by Jerry Evans and himself, and not by Luther Evans. He further averred in his affidavit that there was no intention to select a usurious interest rate. Through this affidavit, along with other supporting documents and testimony, Hamby made a prima facie case for estoppel by presenting evidence that (1) Jerry Evans knew the facts surrounding the formation of the promissory note and the interest rate contained therein, (2) Jerry Evans intended for Luther Evans to rely on the promissory note as consolidating all of the debts owed to him, (3) Luther Evans did not select the interest rate and had no knowledge that the rate was usurious, and (4) Luther Evans relied on Jerry Evans and Joe Evans to pick the interest rate for the promissory note and would clearly be harmed if the note was deemed usurious because usurious contracts are void as to the amount of unpaid interest in excess of the maximum lawful rate, and a borrower may recover twice the amount of usurious interest already paid on the loan. Ark. Const. art. 19, § 13(a)(ii); *Hickman v. Courtney*, 361 Ark. 5, 10, 203 S.W.3d 632, 635 (2005).

We further note that in response to Hamby's motion for summary judgment, Jerry Evans offered no proof that he and his brother did not select the interest rate or that the elements of estoppel were not met. It is well established that once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party, in this case Jerry Evans, must meet proof with proof and demonstrate the existence of a material issue of fact. *Mitchell v. Lincoln*, 366 Ark. 592, 597, 237 S.W.3d 455, 458 (2006). Jerry Evans failed to meet proof with proof because he simply failed to counter the affidavit of Joe Evans and the other evidence before the court. Because of this failure, there is no material issue of fact remaining, and summary judgment was appropriate.

For his second point, Jerry Evans argues that summary judgment was inappropriate in this case because there was a material issue of fact remaining as to whether he could have reinstated Northwest's corporate charter so as to limit his personal liability. He asserts that Hamby never advised him to reinstate the corporate charter and that failure to do so resulted in his being held personally liable on Northwest's debts. In this regard, he relies on Arkansas Code Annotated section 26–54–112, which provides:

(a)(1)(A)(i) Any corporation whose charter or permit authority to do business in the state has been declared forfeited by proclamation of the Governor or the Secretary of State may be reinstated to all its rights, powers, and property.

(ii) Reinstatement shall be retroactive to the time that the corporation's authority to do business in the state was declared forfeited.

Ark. Code Ann. § 26–54–112 (Repl.2008).

Hamby answers this point by emphasizing that the retroactive-reinstatement lan-

guage was added to the statute by Act 522 of 1999, which became effective on July 30, 1999. The promissory note in this case was executed on February 25, 1999, which was several months before the language from Act 522 was added. Thus, Hamby asserts that the new act could not be applied retroactively to the promissory note in the instant case, and, therefore, his failure to advise Jerry Evans to reinstate the corporate charter was not the proximate cause of Jerry Evans's loss.

We initially underscore the point that this court does not have to decide the issue of whether section 26–54–112(a)(1)(A)(ii) may be applied retroactively to affect corporations whose charters were revoked prior to July 30, 1999. This is a legal malpractice case. An attorney is not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of the highest jurisdiction and on which reasonable attorneys may have different opinions. *Nash*, 369 Ark. at 68, 250 S.W.3d at 547. This court has never settled the issue of the retroactive application of Act 522 before its effective date. For that reason alone, it is clear to this court that Jerry Evans cannot prove that Hamby's conduct fell below the generally accepted standard of practice and proximately caused his damages. While Hamby could have advised Jerry Evans that the option to reinstate the charter may be available to him, this fact alone is too tenuous to support proximate cause for legal malpractice.

Further, this court has said the following regarding retroactivity:

Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively.

However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.

*Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 296–97, 9 S.W.3d 520, 526 (2000) (internal citations omitted). In short, there is a presumption against retroactivity unless otherwise clearly expressed by the legislature. We observe, in addition, that the standard of care for an attorney in Arkansas is to exercise reasonable diligence and skill on behalf of the client. *Nash*, 369 Ark. at 68, 250 S.W.3d at 547. Reasonable diligence and skill do not require an interpretation of a statute contrary to the general rules of retroactivity announced by this court. Moreover, the mere possibility of a decision by this court endorsing retroactive application earlier than the effective date of Act 522 cannot be the basis for determining that an attorney failed to meet the standard of care, when neither the legislature nor this court has clearly expressed that the statute at issue applies in such a retroactive fashion.

₂Both parties argue about the application of this court's decision in *Omni Holding and Development Corp. v. C.A.G. Invs., Inc.,* 370 Ark. 220, 258 S.W.3d 374 (2007), to the instant case. In *Omni,* this court held that under the plain language of Arkansas Code Annotated section 26–54–112, reinstatement of the corporate charter was deemed to be retroactive to the date of its revocation. *Id.* at 227, 258 S.W.3d at 380. In addition, this court said, "[p]ursuant to section 26–54–112, the restoration of C.A.G.'s corporate status vested · it with continuous existence as though the revocation of its charter had never occurred." *Id.* at 228, 258 S.W.3d at 380. Finally, we said, "[t]he amended version of section 26–54–112 ... became effective as of July 30, 1999." *Id.* at 227, 258 S.W.3d at 379. This statement refers to Act 522 of 1999, the Act which, as already noted, amended the statute to include the retroactive reinstatement of the corporate charter.

*Omni* is easily distinguishable from the facts of the case at hand because all of the pertinent events in *Omni* occurred *after* the effective date of Act 522. The corporate charter at issue in *Omni* was revoked in 2000 and the payment of taxes to reinstate the corporate charter occurred in 2004. In the instant case, the corporate charter was revoked several months before the effective date of Act 522. For this reason, *Omni*'s discussion of section 26–54–112 does not control the case at hand.

We hold that summary judgment is appropriate in the instant case because no genuine issue of material fact remains to be resolved.

Affirmed.

₃DANIELSON and BAKER, JJ., not participating.