Grant NASH *v.* AMERICAN NATIONAL PROPERTY & CASUALTY CO.

CA 06-611                                                    254 S.W.3d 758

Court of Appeals of Arkansas
Opinion delivered April 4, 2007

*Jeff Slaton,* for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.,* by: *Beverly A. Rowlett,* for appellee.

JOHN B. ROBBINS, Judge. This appeal arises out of the grant of summary judgment to an insurance company regarding an insurance claim. Appellant Grant Nash was a passenger in a car driven by Karim Nimroozi and insured by appellee American National Property and Casualty Company. Nash was injured in a vehicular accident that occurred on March 25, 2002. American paid $50,000 in liability coverage to Nash for injuries he sustained, but this did not fully compensate Nash. Nash sought additional benefits pursuant to the underinsured motorist coverage in the policy. American denied coverage, relying on a reduction clause that offset any underinsured

coverage by any payments made pursuant to liability coverage. Nash claimed that the clause was ambiguous at best, and furthermore, that Ark. Code Ann. § 23-89-209 prevented any reduction clause from taking effect. Both parties moved for summary judgment, asking the trial court to rule in their respective favors as a matter of law. The trial judge agreed with American, and she entered judgment accordingly. This appeal followed.

In reviewing summary-judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). The moving party always bears the burden of sustaining a motion for summary judgment. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998). In a case such as this one where there are no disputed facts, our review must focus on the trial court's application of the law to those undisputed facts. *See id.*

First, Nash argues that the trial court erred in finding that the insurance contract language was unambiguous and that it precluded recovery for underinsured motorist coverage. On this part of Nash's argument, there are no material questions of fact but only the matter of construing the insurance policy and determining if the provisions regarding coverage are ambiguous. The question of whether there is an ambiguity in an insurance contract is initially decided by the court. *Shelter Mut. Ins. Co. v. Williams*, 69 Ark. App. 35, 9 S.W.3d 545 (2000). The language in an insurance policy is to be construed in its plain, ordinary, popular sense, and once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates the coverage. *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Id.*; *see also Nationwide Mut. Ins. Co. v. Worthey*, 314 Ark. 185, 861 S.W.2d 307 (1993). In order to be ambiguous, a term in an insurance policy must be susceptible to more than one reasonable construction. *Insurance Co. of North Am. v. Forrest City Country Club*, 36 Ark. App. 124, 819 S.W.2d 296 (1991). If the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). Policy language is ambiguous if there is doubt or

uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*

The issue in this case is whether the terms of this policy allow for a reduction in underinsured coverage by liability coverage payments regarding the injuries suffered by passenger Nash. The relevant policy language reads that with regard to underinsured motorist claims, "Any amounts payable will be reduced by . . . . (2) any payment made under the Liability Coverage . . . of the policy[.]" The policy provided for $50,000 in liability coverage, which was paid to Nash. The policy provided for $50,000 in underinsured motorist coverage. American argued, and the trial court agreed, that the only reasonable interpretation was that the two figures were offset entirely, rendering nothing available for the underinsured motorist claim. In other words, "any amounts payable" in that section meant the amount payable pursuant to the underinsured coverage purchased. Appellant Nash asserts that the policy can also be read to mean that "any amounts payable" is the amount of damage claimed by Nash, which exceeded $50,000 and left a remaining amount owed under the policy.

The intent of the parties is to be determined from the whole context of the agreement, and the court must consider the instrument in its entirety, not merely disjointed or particular parts of it. *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971); *Fowler v. Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929). If there is no ambiguity, and only one reasonable interpretation is possible, it is the duty of the courts to give effect to the plain wording of the policy. *See Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998).

In order to decide this issue, reference to additional language in the policy is required to give context. This text comes from Part IV of the policy, titled "Uninsured Motorist and Underinsured Motorist Coverages," specifically the subsection for "Coverage UIM-Underinsured Motorist Coverage" setting forth the "Limits of Liability Used in Coverage UIM Only." The relevant language notes that the "limits of liability shown in the Declarations apply" subject to certain restrictions, but that "Any amounts payable will be reduced by . . . any payment made under the Liability Coverage[.]" The only reasonable interpretation is that the amount payable is the limit of UIM coverage purchased by the insured. The trial court did not err as a matter of law in finding this provision unambiguous.

Nash alternatively asserts that even if the reduction clause is clear and unambiguous, it is rendered null and void pursuant to statutory mandate. Nash cites to Ark. Code Ann. § 23-89-209(a)(5), which states that:

> Coverage of the insured pursuant to underinsured motorist coverage shall not be reduced by the tortfeasor's insurance coverage except to the extent that the injured party would receive compensation in excess of his or her damages.

Nash contends that this language applies to him and that this statute prevents the reduction clause from taking effect. We cannot agree. Reading the statute as a whole, it requires insurers to offer to its insureds the minimal coverages mandated by law, which can be rejected by the insured. This contemplates that a contractual relationship exists, fairly negotiated in line with statutory minimums. An insurer may contract with its insureds upon whatever terms the parties agree so long as the terms are not contrary to a statute or public policy. *Pardon v. Southern Farm Bureau Cas. Ins.*, 315 Ark. 537, 868 S.W.2d 468 (1994). This is borne out by reading the entirety of section (a) of the statute:

> (a)(1) No private passenger automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state *unless the insured has the opportunity, which he or she may reject in writing, to purchase underinsured motorist coverage.*
>
> (2) After a named insured or applicant for insurance rejects underinsured motorist coverage, the insurer or any of its affiliates shall not be required to notify any insured in any renewal, reinstatement, substitute, amended, or replacement policy as to the availability of such coverage.
>
> (3) The *coverage shall enable the insured* or the insured's legal representative *to recover from the insurer the amount of damages* for bodily injuries to or death of an insured *which the insured is legally entitled to recover from the owner or operator of another motor vehicle* whenever the liability insurance limits of the other owner or operator are less than the amount of the damages incurred by the insured.
>
> (4) Underinsured motorist coverage shall be at least equal to the limits prescribed for bodily injury or death under § 27-19-605.

(5) Coverage of the insured pursuant to underinsured motorist coverage shall not be reduced by the tortfeasor's insurance coverage except to the extent that the injured party would receive compensation in excess of his or her damages.

(Emphasis added.)

It is apparent that the legislature drafted this statute in a way to allow for insureds, and in the context of section (a) the term "insured" clearly means the purchaser of insurance coverage, to accept or decline underinsured motorist coverage so that their own policies will better able the purchaser to be made whole in the event that the other insurance coverage is insufficient to cover the loss. To interpret this statute otherwise is to create a benefit for a passenger who was not a party to the creation of the insurance policy and not contemplated by the statute. The statute does not broadly specify any class of persons for coverage other than "the insured." *See Foster v. Farm Bureau Mut. Ins. Co.*, 71 Ark. App. 132, 27 S.W.3d 464 (2000). *Compare Mountain States Mut. Cas. Co. v. Martinez*, 115 N.M. 141, 848 P.2d 527 (1993); *Poehls v. Guaranty Nat'l Ins. Co.*, 436 N.W.2d 62 (Iowa 1989). While the parties agreed that passenger Nash was "an insured" for purposes of this insurance policy clause, that definition does not translate to the statute. We cannot say that the insurance policy at issue violates public policy as stated by our legislature.

Affirmed.

GLADWIN and GRIFFEN, JJ., agree.