Cite as 2019 Ark. App. 452

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-18-945

| | |
|---|---|
| | OPINION DELIVERED: OCTOBER 16, 2019 |
| GEORGE KONECNY | |
| APPELLANT | APPEAL FROM THE PRAIRIE COUNTY CIRCUIT COURT, NORTHERN DISTRICT [59NCV-16-33] |
| V. | |
| | HONORABLE TOM HUGHES, JUDGE |
| FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE AND AUTO-OWNERS INSURANCE COMPANY | AFFIRMED |
| APPELLEES | |

## ROBERT J. GLADWIN, Judge

Appellant George Konecny appeals the denial of his uninsured-motorist benefits—specifically arguing that the Prairie County Circuit Court erred in granting summary judgment to his insurers, appellees Federated Rural Electric Insurance Exchange ("Federated") and Auto-Owners Insurance Company ("Auto-Owners") and in denying his cross-motion for summary judgment. We hold that there is no merit to appellant's arguments and affirm the circuit court's order.

I. *Facts*

On August 15, 2014, Konecny, an employee of Arkansas Electric Cooperative Corporation ("AECC"), was driving an AECC pickup truck northbound on Highway 11 in Prairie County when he encountered a Jeep towing another Jeep in the center of the highway. The Jeep, which was making a U-turn in the center of the highway, caused

Konecny to swerve to avoid a collision and to leave the highway. As he veered off the highway on the west side shoulder, he struck a culvert, continued, traveling northwest outside the traffic lane, and hit two trees before coming to a final rest.

It is undisputed that there was no physical contact between the truck operated by Konecny and the Jeep. It also is undisputed that the Jeep left the scene immediately after the incident, and neither the Jeep nor its driver were ever identified.

Michael Livesay witnessed Konecny's accident and saw the driver of the Jeep leaving the accident scene. Arkansas State Police officer Kris McCrea investigated the wreck. Officer McCrea's investigation confirmed that on the basis of the evidence left at the scene, the actions of the Jeep caused Konecny's vehicle to leave the highway. Officer McCrea's investigation confirmed that the Jeep left the scene and corroborated Livesay's statement.

The cause of the wreck is not disputed—the fleeing Jeep caused the wreck but did not hit Konecny's automobile. It is also undisputed that the driver and owner of the Jeep did not file a certificate in accordance with Arkansas Code Annotated section 27-19-503 (Repl. 2014), certifying that at the time of the occurrence, the Jeep and its motorist were operating with the minimum amount of insurance required by law.

At the time of the wreck, there were two insurance policies in effect that provided uninsured-motorist coverage to Konecny, one with appellee Federated and one with appellee Auto-Owners. Both appellees moved for summary judgment arguing that each was entitled to summary judgment because the uninsured-motorist provision required that the insured provide proof that the other vehicle was uninsured and further that contact with a hit-and-run driver was a condition precedent to coverage. Konecny responded to the

motions by arguing (1) there was a statutory presumption that the fleeing driver was uninsured, and under the terms of the policies, he was entitled to coverage; (2) there were facts in dispute with respect to coverage of the other driver; and (3) the contact requirement of the insurance policies violates Arkansas public policy.

Konecny filed a cross-motion for summary judgment against both appellee insurers. The basis for his cross-motion was that there is a statutory presumption that the fleeing driver was uninsured and that he was entitled to coverage under the terms of the policies.

After a hearing on June 6, 2018, the circuit court granted both appellee insurers' motions for summary judgment. The circuit court found that the plain language of both policies required physical contact before the uninsured-motorist provision of the policies was applicable. An order was filed on July 30 granting the summary-judgment motions of the appellee insurers and denying Konecny's cross-motion for summary judgment. Konecny filed a timely notice of appeal on August 28, 2018.

II. *Standard of Review and Applicable Law*

On appellate review, the court determines if summary judgment was appropriate after considering whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Jegley v. Picado*, 349 Ark. 600, 610, 80 S.W.3d 332, 335–36 (2002); *Nash v. Am. Nat'l Prop. & Cas. Co.*, 98 Ark. App. 258, 260, 254 S.W.3d 758, 759 (2007). The moving party bears the burden of sustaining a motion for summary judgment. *Nash*, *supra*. Summary judgment is no longer viewed by the court as a drastic remedy; rather, it is simply viewed as one of the tools in the circuit court's efficiency arsenal. *Marlar v. Daniel*, 368 Ark. 505, 507, 247 S.W.3d 473, 475 (2007). Summary

judgment is appropriate when it is clear that there are "no genuine issues of material fact" to be litigated, and the moving party is entitled to judgment as a matter of law. *Nash v. Hendricks*, 369 Ark. 60, 68, 250 S.W.3d 541, 546–47 (2007). The purpose of summary judgment is not to try issues but to determine whether there are any issues to be tried. *Id*. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet "proof with proof" and demonstrate the existence of a material fact. *Id*.

In addition, this court reviews the circuit court's statutory interpretation de novo because it is for this court to determine the meaning of a statute. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, at 9, 400 S.W.3d 701, 707. Further, when summary judgment is granted pursuant to precedent of the Arkansas Supreme Court, the Arkansas Court of Appeals must affirm the summary judgment. *See Watkins v. Ark. Elder Outreach of Little Rock, Inc.*, 2012 Ark. App. 301, at 8, 420 S.W.3d 477, 483.

"The provisions of an insurance contract are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning." *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 221, 962 S.W.2d 735, 739–40 (1998). This court has said many times that words in a contract must be given their obvious meaning. *Id*. Accordingly, when an insurance contract is unambiguous, its construction is a question of law for the court. *See id*. "Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in the light of their general object and purpose." *Shelter Mut. Ins. Co. v.*

4

*Williams*, 69 Ark. App. 35, 41, 9 S.W.3d 545, 549 (2000). The terms of an unambiguous policy are not to be rewritten to bind the insurer to a risk for which it was not paid. *Id.*

### III. *Analysis*

Konecny argues that the circuit court's order should be reversed for the following reasons. He argues that under the terms of both insurance policies, uninsured-motorist coverage is afforded when there is no liability insurance available at the time of the accident and that the evidence in the record indicates that there was no liability insurance available to him. Konecny further submits that there were genuine issues of material fact as to whether the unknown fleeing driver who caused the wreck was uninsured. Finally, he submits that the contract provision of the insurance policies violates Arkansas public policy, and he urges the court to overrule *Ward v. Consolidated Underwriters*, 259 Ark. 696, 535 S.W.2d 830 (1976), the initial case that upheld the direct-contact requirement. Konecny maintains that this requirement makes no sense when, as here, there is corroborative evidence that proves that the wreck was caused by the fleeing driver, and the possibility of fraud is nonexistent.

We initially look at the express language in the insurance policies relevant to this appeal. The insuring clause of the Federated policy provides:

A. Coverage

> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages sustained must result from "bodily injury" sustained by the "insured" caused by an "accident." The damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

The Federated policy defines uninsured automobile as follows:

F. Additional Definitions

   3. "Uninsured motor vehicle" means a land motor vehicle or "trailer."

      a. For which no liability bond or policy at the time of the "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

      b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

      c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured," a covered "auto" or a vehicle an insured is "occupying."

The insuring clause of the Auto-Owners policy provides:

   2. Coverage.

      a. We will pay compensatory damages, including but not limited to loss of consortium, to any person who is legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by an injured person while occupying an automobile that is covered by Section II – LIABILITY COVERAGE of the policy.

The Auto-Owners policy defines uninsured automobile as follows:

   1. DEFINITIONS

      c. Uninsured automobile means an automobile:

         (1) to which no bodily injury liability bond or liability insurance policy applies:

            (a) at the time of the occurrence; and

            (b) in at least the minimum amounts required by the Financial Responsibility Law in the state where your automobile is normally garaged.

         (2) insured by an insurer that is or becomes insolvent within one year of the date of the occurrence.

6

(3) insured by a company that has issued a successful written denial of coverage.

(4) that is a hit-and-run automobile. By this we mean an automobile:

> (a) that causes bodily injury by actual direct physical contact with the person or the automobile the injured person is occupying;
>
> and
>
> (b) whose owner or operator is unknown.

It is undisputed that the plain language of both policies requires that Konecny, in order to obtain his uninsured–motorist benefits, prove that the other vehicle was uninsured. *See Cross v. State Farm Mut. Auto. Ins. Co.*, 2018 Ark. App. 98, at 7, 541 S.W.3d 495, 500. Under the express provisions of the policies, Konecny is entitled to uninsured–motorist benefits if there is no liability bond or liability insurance that applies. He argues that he presented evidence that there was no insurance available to provide benefits to him for this occurrence. Konecny submits that the fact there was no insurance available is supported by section 27-19-503, which he claims creates a presumption that the unidentified motorist and the Jeep he was operating were uninsured.

We disagree. Despite the undisputed facts that a certificate was not filed with the Arkansas Department of Finance & Administration in accordance with section 27-19-503, our supreme court has explicitly rejected the argument that the Motor Vehicle Safety Responsibility Act, of which section 27-19-503 is a part, creates a presumption that a vehicle is uninsured for purposes of uninsured-vehicle insurance coverage in *Kelley v. USAA Casualty Insurance Co.*, 371 Ark. 344, 266 S.W.3d 734 (2007) (holding that section 27-19-

503 did not overrule *State Farm Mutual Auto Insurance Co. v. Henderson*, 356 Ark. 335, 150 S.W.3d 276 (2004), and that a plaintiff still must prove that the other vehicle is uninsured).

In *Kelley*, *supra*, the circuit court granted summary judgment in favor of the insurer on the plaintiff's claim for uninsured-motor-vehicle benefits. Factually similar to this case, the plaintiff in *Kelley* alleged that her vehicle had been run off the road by an unidentified vehicle that immediately left the scene. The circuit court held that the plaintiff was not entitled to uninsured-motorist benefits under the policy because she failed to prove the other vehicle was uninsured.

On appeal, our supreme court rejected Kelley's argument that the other vehicle was presumed to be uninsured pursuant to section 27-19-503, holding that the Motor Vehicle Safety Responsibility Act neither has bearing on the scope of coverage in an insurance policy nor applies to unidentified drivers and vehicles. *See Kelley*, 371 Ark. at 348, 266 S.W.3d at 738.

We hold that the circuit court correctly followed *Kelley* by rejecting Konecny's argument that failure to comply with section 27-19-503 created a presumption that the unidentified vehicle was uninsured. Moreover, we hold that the circuit court correctly declined to allow a jury to speculate that the other vehicle was uninsured merely because it left the scene. In an attempt to circumvent his lack of proof that the other vehicle was uninsured, Konecny argues that the mere fact that the other vehicle fled the scene was sufficient evidence to create a factual question as to whether that vehicle was insured. The circuit court correctly rejected this argument as well. To the contrary, there are many possible motivations for the other driver to have left the scene other than a lack of insurance.

The driver may have had a suspended driver's license, unpaid tickets, or an outstanding warrant for his or her arrest. The driver may have had insurance but wanted to avoid increased premiums resulting from a reported accident. The driver may have believed he or she was not at fault for Konecny's vehicle veering off the road and felt no obligation to stay. Konecny simply failed to provide sufficient evidence to create a factual question as to whether the unidentified vehicle was covered by a liability bond or policy at the time of the accident. When a plaintiff fails to present evidence that the other vehicle is uninsured, summary judgment in favor of the insurance company is proper. *Kelley*, *supra*; *Ward*, *supra*.

Likewise, the plain language of the policies requires, as a condition of underinsured-motorist coverage, that physical contact occur. It is undisputed that the unidentified Jeep that fled the scene and caused the accident did not make physical contact with either Konecny or his vehicle. Konecny so admits in his complaint:

> On August 15, 2014, [Konecny] was traveling in a vehicle northbound on Highway 11. [Konecny] traveled into the southbound lane of traffic when a Jeep towing another Jeep was turning around in the center of the roadway causing [Konecny] to exit the roadway to avoid collision with the other vehicles. [Konecny] exited the roadway on the west side shoulder striking a culvert. [Konecny] then continued traveling northwest outside the traffic lane striking two trees before coming to final rest.

Konecny likewise conceded in his response to the motions for summary judgment that under existing law, he would not be entitled to coverage because physical contact did not occur. Thus, under the plain language of the policy, Konecny did not meet the conditions for coverage under the "hit and run" provisions because his vehicle did not come into physical contact with the fleeing Jeep.

Konecny makes one last attempt with respect to the contact requirement, urging that it is not a statutory requirement and is inconsistent with the uninsured-motorist statue. It discourages an obedient driver from attempting to avoid striking a vehicle that violates traffic laws and causes property damage and personal injury to the nonoffending driver. He cites cases from several other states that have held the contact requirement is void as against public policy and claims that it contravenes the Arkansas public-policy goal of protecting drivers who are injured by financially irresponsible drivers. Ark. Code Ann. § 23-89-404 (Supp. 2007).

Konecny acknowledges that the Arkansas Supreme Court has previously addressed whether the contact requirement violated public policy and found that it did not. *See Ward, supra.* And in 2004, our supreme court again addressed the contact rule and declined to overrule *Ward. See Henderson, supra.* Konecny cites *Henderson*, noting that Justice Brown concurred but stated that should the General Assembly not clarify the law with respect to uninsured-motorist coverage, he would not close the door to revisiting *Ward. Henderson*, 356 Ark. at 344–45, 150 S.W.3d at 281. Konecny urges that it is time for the court to overrule *Ward* and hold that the contact rule is against public policy when there is corroborative evidence that the wreck was caused by an unknown driver.

We decline to overrule the clear precedent set forth in *Ward*, *Henderson*, and *Kelley* pursuant to *Watkins*, *supra*, and remind Konecny that we must follow the precedent set by the Arkansas Supreme Court and are powerless to overrule its decisions.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

*James, Carter & Priebe, LLC*, by: *Daniel R. Carter* and *Paul J. James*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.*, and *Kimberly D. Young*, for separate appellee Federated Rural Electric Insurance Exchange.

*Anderson, Murphy & Hopkins L.L.P.*, by: *Randy P. Murphy* and *Brandon T. Cole*, for separate appellee Auto-Owners Insurance Company.